Mark Malachowski (CSBN 242696)
Attorney at Law
  Malachowski and Associates
  760 Market Street, Suite 947
  San Francisco, CA 94102
  Telephone: (415) 983 – 0717
  FAX: (415) 986 – 8068
  mark@marklawsf.com

Attorney for Mohamed Abouelhassan

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Mohamed Abouelhassan, <br><br> Plaintiff, <br><br> v. <br><br> The United States of America (U.S. Government), Donald C. Fischer, Jr., Civilian Leader of the Defense Language Institute, Presidio of Monterey, Department of Defense, Elena Levintova Allison, Defense Language Institute, Department of Defense, <br><br> Defendants. | Case No. C 07-4038 RS <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** <br><br> 1. **VIOLATION OF THE EQUAL PAY ACT (EPA)** <br> 2. **VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA)** <br> 3. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** <br> 4. **VIOLATION OF THE DUE PROCESS CLAUSE OF THE 5th AMENDMENT OF THE U.S. CONSTITUTION** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff MOHAMED ABOUELHASSAN, an individual, alleges against Defendants as follows:

Case No. C07-4038 RS
FIRST AMENDED COMPLAINT
_____
C:\Documents and Settings\HP_Administrator\My Documents\Law\abouelhassan.amend.complaint.15.efile.doc - 1 -

## JURISDICTION AND VENUE

1. Plaintiff is alleging violations of his rights under The Fair Labor Standards Act (FLSA) of 1938 and the Equal Pay Act (EPA) of 1963; 29 U.S.C. 206(d). Jurisdiction is conferred upon this Court by 28 U.S.C. § 1346(b), 29 U.S.C. § 216(b), and 29 C.F.R Section § 1620.1, et seq. This court has subject matter jurisdiction of the federal claims pursuant to 28 U.S.C. § 1331.

2. This action arises in part under the FLSA of 1938; 29 U.S.C.A §215(a)(3). Jurisdiction is conferred upon this Court by 29 C.F.R Section § 215(a)(3).

3. This action in part arises from claims sounding in tort for intentional infliction of emotional distress under. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1346(b).

4. This action in part is brought in part to remedy the deprivation of rights, privileges and immunities of the citizens of the United States and/or persons within the United States guaranteed and protected by the 5th Amendment of the United States Constitution. Jurisdiction is conferred upon this Court to 28 U.S.C. § 1331.

5. The supplemental jurisdiction of this Court is invoked over claims which arise under California law by virtue of the fact that such claims arise out of the same transaction or series of transactions or nucleus of operative facts as do the claims herein under federal constitutional and statutory law. Jurisdiction is conferred upon this Court to 28 U.S.C. § 1367.

6. Venue is proper under 28 U.S.C. § 1391. The unlawful acts and practices alleged herein occurred within this judicial district.

## INTRADISTRICT ASSIGNMENT

7. Pursuant to Local Rule 3-2, the San Jose Division is appropriate because the unlawful acts and practices alleged herein occurred within this judicial district.

## PARTIES

8. Plaintiff Mohamed Abouelhassan (hereinafter referred to as "Plaintiff" or "Abouelhassan") is an individual, residing in San Jose, Santa Clara County, California.

9. Defendants The United States of America (U.S. Government) in its capacity as employer and principal,

10. Donald C. Fischer, Jr., Civilian Leader of the Defense Language Institute, Presidio of Monterey, Department of Defense, in his official capacity as Provost of the Defense Language Institute,

11. Elena Levintova Allison, Defense Language Institute, Department of Defense, in her official capacity as Mr. Abouelhassan's supervisor (hereinafter referred to collectively as "Defendants").

## GENERAL ALLEGATIONS

12. Plaintiff, an Arab Egyptian, was hired by Defense Language Institute (DLI) as an Assistant Professor, on or about April 3, 2006.

13. Mr. Abouelhassan was discriminated against based on his 1) race, 2) nationality, 3) religion, and 4) sex. Mr. Abouelhassan is a male Egyptian of the Arab race. He is a practicing Muslim.

14. Mr. Abouelhassan entered the DLI while the agency's demographics were rapidly changing. They still are. For many years the DLI was dominated by Russian-speaking employees. Most of the employees were either from Russia and/or had an Eastern European ethnic background. As a result of many years of high demand for Russian linguists many of the supervisors at the DLI have Russian backgrounds.

15. Mr. Abouelhassan was hired by the DLI, Department of the Army and supervised by Elena Levitnova Allison (Ms. Allison). Ms. Allison is of Russian descent. Ms. Allison's father worked for the DLI for many years and was a Russian linguist.

16. However, the war on terror has created a demand for Arabic speaking interpreters. The DLI has had to hire many Arab interpreters to help fight the war on terror. Mr. Abouelhassan was hired as one such interpreter. The need for Arabic interpreters has created strife within the DLI. Many of the Russian supervisors hold the newer Arab employees in contempt.

17. Historically, in a political sense, the USSR, or larger Russia, has had a benefactor/client relationship with Egypt, which has led many Russians to consider Egyptians as second class citizens. Here, the Arab interpreters have faced discrimination at the hands of the Russian supervisors. Egyptians consist of nearly 90% of the Arabs at this workplace. As an Egyptian Arab, Mr. Abouelhassan has been one victim of such discrimination.

## **FIRST CAUSE OF ACTION**

### **(VIOLATION OF THE EQUAL PAY ACT)**

18. Abouelhassan repeats and realleges each and every allegation and statement of fact contained in Paragraphs "1" through "17" with the same force and effect as though the same were set forth fully at length therein.

19. Mr. Abouelhassan has faced continuing and ongoing discrimination since the first day of his employment. Mr. Abouelhassan was hired with an annual salary of $52,000. One week prior to Mr. Abouelhassan's employment, the DLI hired a Russian interpreter (linguist), Svetlana Witmer, at an annual salary of $58,000.

20. Ms. Witmer was hired at the same rank and for the same team as Mr. Abouelhassan. Her job requires the same equal skill, effort, and responsibility as does Mr. Abouelhassan's job and both jobs are performed under similar working conditions. Despite this, Ms. Witmer earns $6,000 more per year than Mr. Abouelhassan. The DLI pays the female interpreters more than male interpreters. When Mr. Abouelhassan complained about the pay to his supervisor, Ms. Allison, he was told there was nothing that could be done.

21. This $500 deferential in monthly pay, due to Mr. Abouelhassen's sex, over a period of 18 months, damaged Mr. Abouelhassan in the amount of $9,000.

## SECOND CAUSE OF ACTION

## (VIOLATION OF THE FAIR LABOR STANDARDS ACT)

22. Abouelhassan repeats and realleges each and every allegation and statement of fact contained in Paragraphs "1" through "21" with the same force and effect as though the same were set forth fully at length therein.

23. Mr. Abouelhassan was retaliated for engaging in protected activities under the FLSA. In October 2007, Mr. Abouelhassan received a poor job performance review after filing a suit in federal court against the DLI alleging discrimination.

24. On October 23, 2007, Ms. Allison gave Mr. Abouelhassan a poor performance review (3 on a scale of 1 to 5, with 1 being the best). This was in contrast to a very good review (1 on a scale of 1 to 5 with 1 being the best) that Mr. Abouelhassan had received on October 23, 2006, before filing an employment discrimination complaint against Ms. Allison and the DLI in federal court on August 7, 2007.

25. On November 19, 2007, Ms. Allison informed Mr. Abouelhassan that he would be laid off if there was no available spot for him in another department or program. It appears that the poor review and the threatened layoff are an attempt to either justify laying Mr. Abouelhassan off, using the poor review as a pretext, or an attempt to effect a constructive discharge by making working conditions so unbearable the Mr. Abouelhassan is forced to involuntarily resign.

26. In doing the abovementioned acts, Ms. Allison intentionally retaliated against Mr. Abouelhassan for filing a complaint.

### THIRD CAUSE OF ACTION

### (INTENTIONAL INFLICITON OF EMOTIONAL DISTRESS)

27. Abouelhassan repeats and realleges each and every allegation and statement of fact contained in Paragraphs "1" through "26" with the same force and effect as though the same were set forth fully at length therein.

28. Abouelhassan alleges intentional infliction of severe emotional distress.

29. Abouelhassan has faced continuing harassment and discrimination throughout his employment.  The Arab translators were degraded and demeaned by the Russian supervisors.  In one conversation (on or about July, 2007) between Ms. Allison and another Russian supervisor, Natasha Antokhin, several of the Arabs translators were called "stupid Arabs", "bad", "does not have a clue" and "difficult/stubborn."   In another conversation, in or about August, 2007, Ms. Allison told her supervisor, Greg Brendel

that "these Arabs, they get high degrees from their countries without even knowing grammar". Mr. Abouelhassan believes that such comments were common.

30. Mr. Abouelhassan was also treated differently than the Russian interpreters. In May 2007, Mr. Abouelhassan was told he could work remotely from his home. In reliance on this agreement, Mr. Abouelhassan moved to Ceres, California. After approximately two months, Mr. Abouelhassan was told he had to return to the office in Monterey. This was despite the fact that Ms. Allison allowed a Russian, Andrei Aleinikov, to continue to work remotely, and Ms. Allison herself was working remotely. When Mr. Abouelhassan returned to his office it was not ready for work. There was no phone, network access, email connection or printer available. When Mr. Abouelhassan complained, Ms Allison refused to deal with the situation.

31. Ms. Allison put Mr. Abouelhassan on probation when he returned to the Monterey office because of allegedly poor work performance. This was despite the fact that Mr. Abouelhassan did more work than his colleagues. The average employee developed six to seven lessons while Mr. Abouelhassan developed eight lessons. Ms. Allison claimed Mr. Abouelhassan had done no lessons, as an excuse to put him on probation. Mr. Abouelhassan was given a poor review despite better than average performance. Ms. Allison continued to give Mr. Abouelhassan poor reviews despite his superior performance.

32. In October 2007, Ms. Allison gave Mr. Abouelhassan a 3 on a scale of 1 to 5, with 1 being the best, claiming Mr. Abouelhassan completed 8 out of the required 12 lessons. In fact, Mr. Abouelhassan completed 13 lessons. When Mr. Abouelhassan showed Ms. Allison that he actually completed 13 lessons, she claimed that she did not have time to review the issue.

33. Abouelhassan filed a formal complaint alleging the aforementioned claims with the DLI Equal Employment Opportunity Office (EEOO) on November 21, 2007.  The hostile work environment and atmosphere of fear of retaliation has had a chilling affect on DLI personnel asserting their right to a discrimination free workplace.  The severe emotional distress that Abouelhassan is suffering is current and ongoing, and greater, impending harm will be incurred before the exhaustion of administrative remedies is complete.

34. The informal EEOO process yielded a finding that will almost certainly, only be repeated in the formal process, and thus Abouelhassan alleges that he has in effect exhausted his administrative remedies.

35. Ms. Allison was aware of Mr. Abouelhassan's plan to purchase a house in Ceres, California, when she agreed to let him work remotely. When Mr. Abouelhassan had to return to the office in Monterey rather than work remotely, it resulted in financial hardship resulting in the loss his community property interest in the house in Ceres, California, the equity which is estimated to have been worth $150,000.

36. It was extreme and outrageous for Ms. Allison to initially allow Mr. Abouelhassan to work remotely, knowing that Abouelhassan would purchase a house in Ceres, California, and that Abouelhassan would then move his family to Ceres, California, and then for Ms. Allison, only a short time later  (approximately two months) capriciously and without justification, revoke his ability to work remotely.

37. It is not feasible to commute from Ceres to Monterey every day because it is approximately a three hour drive each way. Also, there was no intervening event between granting the allowance and revoking it that would justify Ms. Allison's revoking Abouelhassan's remote workplace status.

38. Thus, Plaintiff alleges that Ms. Allison granted him the remote workplace allowance with the intent that he purchase a house and move his family to Ceres, and then be forced to move back closer to work after the allowance was revoked.

39. By doing the aforementioned acts, Ms. Allison intended for Mr. Abouelhassan to suffer severe emotional distress, and Mr. Abouelhassan did in fact suffer severe emotional distress.

## FOURTH CAUSE OF ACTION

### (VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION)

40. Abouelhassan repeats and realleges each and every allegation and statement of fact contained in Paragraphs "1" through "39" with the same force and effect as though the same were set forth fully at length therein.

41. Abouelhassan alleges discrimination in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment of the U.S. Constitution.

42. Abouelhassan alleges that the rules governing performance reviews and working from a remote location were applied in a discriminatory manner, on the basis of race, sex and national origin, in violation of his constitutional rights.

43. In October 2007, Ms. Allison gave Mr. Abouelhassan a poor review (a 3 on a scale of 1 to 5, with 1 being the best) when in fact his work deserved a very good review (1 on a scale of 1 to 5, with 1 being the best).

44. On November 19, 2007, Ms. Allison informed Mr. Abouelhassan that he would be laid off if there was no available spot for him in another department or program. Moreover, Mr. Abouelhassan, was informed that in order to keep his job, he would have to go through a new hiring process, which requires submitting a resume, passing an interview,

and performing three teaching presentations for the hiring panel, all in competition with outside applicants.

45. However, during this re-organization, other similarly situated employees, and even those who had less seniority than Mr. Abouelhassan, were given new assignments, with no threat of lay off, and no requirement to go through a new hiring process.

46. Mr. Abouelhassan alleges that the poor review based on a discriminatory application of the performance rules, is being as a means of effecting a constructive discharge and may be used as a pretext to justify an impending layoff.

47. By doing the aforementioned acts, Ms. Allison violated Mr. Abouelhassan's equal protection rights under the due process clause of the Fifth Amendment of U.S. Constitution.

48. As a direct and proximate cause of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer damages, including reduced pay, loss of promotional opportunities, severe emotional distress, and other damages in an amount to be proven at trial.

49. As a matter of public policy, the U.S. Army has historically been on the forefront of integration.  At this pivotal juncture in history, when so much depends on Arabic speaking citizens providing insight into the Middle East question, the U.S. Government can ill afford to alienate the very parties that it relies on for its intelligence.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

50. PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS WHERE ALLOWED BY LAW.

WHEREFORE, Plaintiff prays for judgment against Defendant on all causes of action as follows:

1. For monetary relief in the sum according to proof, including but not limited to,

1  uncompensated wages, promotion and benefits,

2  2. For an order for the defendant to cease and desist its discriminatory practices against

3  Egyptians and Arabs, and to enjoin the DLI from using the poor review based on

4  discrimination, discriminatory application and retaliation as a pretext for laying Mr.

5  Abouelhassan off,

6  3. For general damages for severe emotional distress, and special damages in a sum

7  according to proof,

8  4. For the interest on damages awards, including prejudgment interest, and for reasonable

9  attorney fees and costs,

10  8. For cost of suit herein, and

11  9. For such other and further relief as this court deems just an proper.

14  Dated: December 3, 2007                    Respectfully Submitted,

                                              _____/s/_____
                                              Mark Malachowski
                                              Attorney for Mohamed Abouelhassan

Case No. C07-4038 RS
FIRST AMENDED COMPLAINT